**Carmen N. BARRERAS RUIZ, et al., Plaintiffs,**

v.

**The AMERICAN TOBACCO COMPANY, et al., Defendants.**

**Civil No. 96–2300 (JAF).**

United States District Court, D. Puerto Rico.

Sept. 9, 1997.

Jorge Ortiz–Brunet, Ortiz–Toro & Ortiz–Brunet, San Juan, PR, Alvaro R. Calderon, Jr., San Juan, PR, for Plaintiff.

Manuel A. Guzman–Rodiguez, McConnell Valdes, San Juan, PR, Heriberto J. Burgos–Perez, Salvador Antonetti–Zequeira, Fiddler Gonzalez & Rodriguez, San Juan, PR, Francisco A. Besosa, Axtmayer, Adsuar, Muñiz & Goyco, San Juan, PR, Hector Reichard, Jr., Lasa, Escalara & Reichard, San Juan, PR, William A. Graffam, Jimenez, Graffam & Lausell, San Juan, PR, Richard M. Kirby, Jones, Day, Reavis & Pogue, Atlanta, GA, Laura C. Fey, Gary R. Long, Craig E. Gustafson, Shook, Hardy and Bacon, L.L.P., Kansas City, MO, for Defendants.

## ORDER

FUSTE, District Judge.

The Tobacco Institute moves for reconsideration or for certification for interlocutory appeal in response to this court's denial of their motion to dismiss for lack of jurisdiction. *See Barreras Ruiz v. The American Tobacco Company,* 964 F.Supp. 613 (D.P.R. 1997). The Tobacco Institute argues that in our analysis we erred thrice. Our first error, it argues, was our alleged failure to examine the evidence of record to demonstrate jurisdiction, and that the plaintiffs should have and failed to present "affirmative" proof of the specific facts underlying jurisdiction. In that light, the Tobacco Institute points out that no evidence specific to Puerto Rico was provided by plaintiffs. Second, it challenges the concept that tort cases require a lower standard of purposeful availment. Our third alleged error, stemming from the other two, is our failure to require proof that defendant has committed fraud in this jurisdiction. In addition to their interpretation of First Circuit precedent, the Tobacco Institute relies on Ohio and Louisiana district court orders granting dismissal.

### I.

However well-argued the Tobacco Institute's position may be, it fails to demonstrate any error on our part. First, before addressing their challenges in detail, we must reiterate a crucial element of our decision overlooked by the Tobacco Institute, that obviates its concerns. Not inconsequential to our decision was the closing paragraph, in which we stated that "the issue of whether this court has jurisdiction over the Tobacco Institute may be revisited should jurisdiction appear inappropriate at a later date."

This statement unequivocally qualified our jurisdictional determination as preliminary. To explicate the bases for this posture, we relied on two aspects of jurisdictional jurisprudence. First, the court never relinquishes its dominion over jurisdictional questions. As the First Circuit stated in *Boit v. Gar–Tec,* 967 F.2d 671 (1st Cir.1992), "a denial of a motion to dismiss [for lack of

jurisdiction] is an implicit deferral until trial of the final ruling on jurisdiction." *Id.* at 678. In that sense, a denied motion to dismiss for lack of jurisdiction does not carry the ultimate judgment of the court. In light of this deferral, furthermore, we will not prevent the Tobacco Institute from raising these very arguments again, especially once discovery reifies or eliminates the plaintiffs' fraud allegations.

■ Second, the "likelihood standard" of assessing jurisdictional motions governed our task. *Foster–Miller v. Babcock & Wilcox Canada,* 46 F.3d 138 (1st Cir.1995), delineated three interpretations for district courts to follow: 1) the *prima facie* standard, in which a court must ascertain whether a plaintiff has proffered the essential facts for jurisdiction; 2) the preponderance of the evidence standard, which requires the court to measure plaintiff's representation against that higher standard; and 3) the "likelihood" standard, engaged when the determination of jurisdiction is so closely intertwined with the facts of the case that the court must perform some fact finding, "limited to probable outcomes as opposed to definitive findings of fact." *Foster–Miller,* 46 F.3d at 146.

The latter method must be followed in the instant case because a categorical jurisdictional determination would require discovery as to the ultimate issue at bar: Whether the Tobacco Institute committed fraud in this jurisdiction through any public relations efforts in which it may have engaged. Only by viewing allegations and defenses substantiated by discovery can we concretely determine if the Tobacco Institute should be haled into this forum.

The First Circuit recognized the limited application of this method as one standing between the preponderance of the evidence and the *prima facie* tests. It cited to an article examining conspiracy jurisdiction as a situation in which the line between jurisdictional and ultimate questions of fact is blurred. Conspiracy jurisdiction occurs where nonresident defendants may be haled into a forum in which they have engaged in the commission of a tort, including product liability, either directly or indirectly through other parties to the conspiracy. Ann Alt-

house, *The Use of Conspiracy Theory To Establish in Personam Jurisdiction: A Due Process Analysis,* 52 Fordham L.Rev. 234 (1983). We cannot assess yet if the Tobacco Institute may be haled into this forum based on conspiracy. A conspiracy jurisdiction case requires the traditional jurisdictional analysis be connected to the alleged conspirator through specific acts, permitting liability for acts whose effects were felt in the forum. *Id.* at 254–55. In this case, as in a conspiracy jurisdiction case, indistinguishable are the facts proving jurisdiction and the facts proving the ultimate case itself.

Indeed, the process for assessing a conspiracy jurisdiction case appears quite close to that of the instant case, in the complex interrelation of jurisdictional and ultimate case facts. After a court retains preliminary jurisdiction, "[t]he court will then view itself as possessing 'threshold jurisdiction,' permitting it to retain the case through the discovery and motion stages. As long as the court makes no conclusive findings of personal jurisdiction, the defendant may, upon further development of the record, renew its motion to dismiss." *Id.,* at 247–48. We decided that since the plaintiff had creditably alleged that the Tobacco Institute had committed fraud, we would deny the motion to dismiss pending further discovery.

Our explicit statement that the question of jurisdiction could be revisited plainly invoked the probable rather than the definite. The misunderstanding on the part of the Tobacco Institute colors their entire motion, which does not even reference this preliminary posture we have taken.

## II.

We now address the three points argued by the Tobacco Institute. The Tobacco Institute points out that there are no specific allegations that a plaintiff in this case received information from them. The Tobacco Institute claims, citing *Boit,* 967 F.2d at 675, that the court must require affirmative proof of the jurisdictional allegations. Our analysis, following the standard in *Foster–Miller v. Babcock & Wilcox Canada,* 46 F.3d 138 (1st Cir.1995), focused on the three require-

ments for jurisdiction: The forum state activities of the defendant, the availment of the forum, and the reasonableness of the exercise of jurisdiction. It was in that context that we examined the reasonableness of the fraud allegations. We found that the reasonableness of such allegations outweighed the weakness in the other criteria. "An especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Ticketmaster–New York v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994). The affirmative proof, as we stated above, assessed using the "likelihood standard," yields a preliminary decision. This standard has two effects: The speculative analysis by the court in the face of entangled jurisdictional and ultimate issues, and that this analysis comes with a concomitant reduction in the decision's finality. Only likelihood must be proven for the motion to dismiss to be denied, albeit provisionally. *See Foster–Miller*, 46 F.3d at 146.

Second, the Tobacco Institute argues that in lowering the purposeful availment standard, we erroneously relied on *Thompson Trading v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989). That case held that the standard for purposeful availment in a tort case was lower than in a contract case. When a party conducts business in a forum, that party has purposefully availed itself of the benefits and protections of the forum's laws. However, "[i]t is nonsensical to say that one committing a tort in a forum has availed himself of that jurisdiction's laws," *id.* at 426, because the action in that jurisdiction specifically violated those laws and, thus, by definition does not come under their protection. The Tobacco Institute claims without support that this slight variation of the purposeful availment standard in tort cases is not one held by the First Circuit. By following this theory of purposeful availment, we employed the jurisdictional analysis appropriate for this context.

Third, the Tobacco Institute argues there was no evidence of their participation in the forum. This challenge goes to the heart of the necessity for the likelihood analysis. Whether the Tobacco Institute made statements in Puerto Rico is an inquiry whose fruit would not only determine jurisdiction but the substance of this case. Discovery regarding this issue cannot be disaggregated from more holistic discovery that will reveal whether the Tobacco Institute acted in Puerto Rico as well. An irrevocable jurisdictional determination without the benefit of further discovery would be unjust to the parties. Under the "likelihood standard," the determinations of accuracy and integrity of plaintiffs' assertions are "not true findings of fact, for they lack definiteness to some degree, and they also lack the preclusive quality that would otherwise normally attach." *Foster–Miller*, 46 F.3d at 147.

As we have stated above, the evidence in this case is sketchy because only discovery related to the case will reveal the fulfillment of the jurisdictional requirements. On one hand, the Tobacco Institute points that no evidence has arisen that it has made statements in Puerto Rico. It astutely points to the experience of the plaintiffs' attorneys in this sort of litigation, providing them with an arsenal-like archive of materials. Of those preliminary materials provided by plaintiffs, none were directed explicitly to Puerto Rico consumers nor were any in Spanish. In its support, the Tobacco Institute cites to *Ticketmaster–New York*, 26 F.3d 201, which required a product actually be in the forum rather than be perceived as present.

■ However, although that may be true for the archetypal product, the Tobacco Institute emits an atypical product: Positive information and perceptions about tobacco that permit its sponsor companies to sell their products. The Tobacco Institute's product then is public relations rather than cigarettes, and if they transmitted information that they knew to be false, their actions would constitute fraud. Had the Tobacco Institute failed to achieve an amelioration in the public's view of the tobacco industry, its sponsors would have long ago ceased their inversions. Plaintiffs did provide evidence of the Tobacco Institute's role generally in greasing the cogs of public opinion to foster cigarette sales, and at this point we find it "likely" that it performed this role in Puerto Rico.

Within this context, the Tobacco Institute criticizes this court's reference to *Cipollone v. Liggett Group,* 893 F.2d 541, 551 (3rd Cir.1990). We referred to Ms. Cipollone's awareness of the Tobacco Institute's literature as an example of the likelihood that other plaintiffs, including those in this case, would have been similarly deceived by the Tobacco Institute literature. This court viewed Ms. Cipollone's statements as probative of the Tobacco Institute's potentially fraudulent behavior. The circumstances of that case have only indirect bearing on the instant one: In the absence of information regarding Puerto Rico forum participation, we looked to *Cipollone* as an example of the role the Tobacco Institute might have played here in the forum of Puerto Rico. We made no concrete factual findings in that regard; rather, we analyzed the likelihood that the allegations were substantiated. Under the likelihood standard enunciated in *Foster–Miller,* 46 F.3d at 146, we find that plaintiffs' assertions of the Tobacco Institute's participation in the forum of Puerto Rico may prove accurate and, therefore, decline to reconsider our previous denial of defendant Tobacco Institute's motion to dismiss at this point. We specifically guarded and retain the issue of jurisdiction against the Tobacco Institute as an open issue for further resolution, and maintain our previous ordering of sanctions against plaintiffs should jurisdiction ultimately fail.

### III.

The Tobacco Institute moves in the alternative for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which we review because we have declined to reconsider our denial of the motion to dismiss. That section requires the satisfaction of a three-pronged test: 1) the district court considers the question of law a controlling one; 2) there is substantial ground for difference of opinion; and 3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.*

First, the issue of law as to whether this court may exercise jurisdiction over the Tobacco Institute is plainly a controlling question of law: Without jurisdiction over this defendant, it would not remain as a defendant in the case. *See,* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure 2d,* § 3931, at 453–56 (1996). However, we find there is no substantial ground for difference of opinion: Far from dubious, we view the preliminary retention of jurisdiction over the Tobacco Institute as the only possible just action at this stage. Given the indisputably indistinguishable nature of the evidence for jurisdiction and that for the ultimate case, we see no possibility that the Court of Appeals would better resolve this issue than well-deserved further discovery and reassessment would. Because this matter cannot be resolved with any greater nitidity, appellate review would actually delay the ultimate termination of this litigation. For these reasons, we, therefore, deny the Tobacco Institute's motion for interlocutory appeal.

In conclusion, the Tobacco Institute's motion for reconsideration is **DENIED.** This Opinion and Order disposes of *Docket Documents Nos. 69. 72. and 82.*

**IT IS SO ORDERED.**