Carmen N. BARRERAS RUIZ; Angel O. Montañez Rivera; Maria Agrait Arroyo; Carmen Rios Vazquez; Carlos Manzanal Valencia, and Francisco Aviles Rodriguez, Plaintiffs,

v.

The AMERICAN TOBACCO COMPANY; R.J. Reynolds Tobacco Company; Philip Morris, Inc.; Brown and Williamson Tobacco Corporation; Lorillard Tobacco Company, Inc.; Lorillard, Inc.; The Tobacco Institute, Inc.; B.A.T. Industries PLC, and The Council for Tobacco Research—USA, Inc., Defendants.

Civ. No. 96–2300(JAF).

United States District Court, D. Puerto Rico.

March 17, 1998.

---

**1.** The fact that the attorneys for both sides are from Boston does not, in this Court's opinion, constitute good cause.

Jorge Ortiz–Brunet, Ortiz–Toro & Ortiz–Brunet, Alvaro R. Calderon, Jr., San Juan, PR, for Plaintiff.

Heriberto J. Burgos–Perez, Salvador Antonetti–Zequeira, Fiddler Gonzalez & Rodriguez, San Juan, PR, Richard M. Kirby, Jones, Day, Reavis & Pogue, Atlanta, GA, Laura C. Fey, Gary R. Long, Craig E. Gustafson, Shook, Hardy and Bacon, L.L.P., Kansas City, MO, Manuel A. Guzman–Rodriguez, Francisco A. Besosa, Axtmayer, Adsuar, Muñiz & Goyco, Laura C. Fey, Hector Reichard, Jr., Lasa, Escalera Reichard, William A. Graffam, Jimenez Graffem & Lausell, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

In this suit, plaintiffs seek damages against the defendant cigarette manufacturers for damages resulting from their addiction. Plaintiffs now move to certify under Fed.R.Civ.P. 23(a) and (b) the class of individuals who have purchased and smoked cigarettes; the estates, representatives, and administrators of the residents who were or are nicotine dependent cigarette smokers; and the relatives, heirs, and survivors of the latter category. Defendant tobacco manufacturers oppose the certification.

### I.

### Plaintiffs' Claims and Proposed Class

#### A. Plaintiffs' Claims

The basis for plaintiffs' suit is the allegedly-tortious manufacture, promotion, and sale of cigarettes in Puerto Rico. Specifically, plaintiffs claim that defendants committed fraud and deceit in marketing cigarettes as safe and not addictive, and that defendants violated consumer protection laws and breached implied warranties of their product. Plaintiffs claim defendants therefore committed negligence and should be strictly liable for the harms allegedly caused by the smoking of cigarettes. Plaintiffs not only request the certification of the class of smokers in Puerto Rico, but also request that the medical monitoring of this group be ordered by this court. They make this request pursuant to 31 L.P.R.A. § 5141, Puerto Rico's tort statute. Plaintiffs propose the class action trial take place in two stages. First, it would be determined whether nicotine is addictive; whether defendants denied its addiction; whether defendants knew or should have known of nicotine's addictive quality, and whether they manipulated the level of nicotine. Other issues covered include whether cigarettes are unreasonably dangerous because of toxic additives; whether defendants negligently or intentionally exposed class members to a hazardous substance or an unreasonably dangerous product; whether defendants acted in concert or pursuant to a common design to expose class members to hazardous substances or a defective and unreasonably dangerous product; whether defendants violated the Consumer Protection Statute of Puerto Rico; whether class members are at increased risk of disease because of smoking defendants' cigarettes; whether defendants have acted in concert or pursuant to a common design to withhold from class members information as to the addictive nature of nicotine or to confuse them with regard to the same; whether class members face an increased risk of disease because of having smoked defendants' cigarettes, and, if so, whether this risk makes medical monitoring necessary; and whether and under which form medical monitoring might be effective.

#### B. Proposed Trial Plan

If the jury found in favor of the plaintiffs on any of these issues, the case would go to a second phase in which the case would be published to invite filing by individual plaintiffs. In those trials, the issues of prior medical and family history, comparative negligence, statute of limitations, and assumption of risk may be raised by defendants. During the trial, expert testimony could be employed by both parties regarding the scope of the class member's addiction and lost wages. Plaintiffs propose limiting defendants' expert testimony to one half-day each.

## II.

### Legal Standards for Certification

The complexity of representing an entire class of plaintiffs requires legal standards to adjudicate fairly matters of such broad relevance. We first summarize the rules and then elaborate on the most relevant elements of the statute. Fed.R.Civ.P. 23 announces the four prerequisites for a class action: 1) numerosity, or that the class' size makes joinder of all members impracticable; 2) commonality, or that questions of law or fact are common to the class; 3) representativeness, or that the claims or defenses of the representative parties are typical of the class; and 4) fairness, or that the representative parties will fairly protect the class's interests. Rule 23(b) requires one of three standards be met. The first is that separate actions would create a risk of a) inconsistent or varying adjudications, and b) that the adjudications would impair non-parties' rights to recovery. The second is that the party opposing the class has acted or failed to act on grounds generally applicable to the class, making a class-wide resolution appropriate. The third, used by plaintiffs, provides for certification when two criteria are met: 1) that common issues predominate over individual issues, and 2) the class action is a superior means by which to adjudicate the problem. Specifically, the matters pertinent to these findings include: The interest of members of the class; the nature of any litigation already commenced by or against members of the class; the advantages of concentrating the litigation, and the difficulties in managing the class action.

Two recent cases provide us with relatively-clear direction in interpreting the law on class action certification. The United States Supreme Court recently clarified the law on mass tort class action litigation in the context of asbestos in *Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), in which it affirmed *Georgine v. Amchem*, 83 F.3d 610 (3rd Cir. 1996). That case fostered a laborious yet apparently fruitful solution to the flood of asbestos cases, in which defendants had accepted class certification as part of a universal resolution to present and future asbestos liability. The Third Circuit decertified the class, holding that even if it had been a product of mutual consent, it must comply with the requirements of Rule 23. The Supreme Court's affirmance of the Third Circuit ultimately hemmed in the lower court's broader reading of Rule 23, stating that the trial was "likely to present significant questions, not only of damages but of liability and defenses of liability ... affecting individuals in different ways." *Id.* 117 S.Ct. at 2250. The breadth of the class' interests defeated the commonality requirement. Although, as plaintiffs note in their reply to defendants' opposition, *Docket Document No. 85*, *Amchem* and the instant proposed class are quite distinct. Nonetheless, *Amchem's* firm contribution to class action law is the unequivocal requirement that proposed classes meet the hurdle of Rule 23 in all its rigor in order to attain certification.

Prior to the *Amchem* case, the Fifth Circuit ruled similarly in the context of cigarette liability litigation. As in the *Amchem* case, the *Castano* plaintiffs moved to certify the class of cigarette smokers nationwide and the Eastern District of Louisiana certified the class, *Castano v. American Tobacco Company*, 160 F.R.D. 544 (E.D.La.1995), but was reversed by the Fifth Circuit, 84 F.3d 734 (5th Cir.1996). The Fifth Circuit decertified the class, providing us with the strongest precedent in this relatively-new area of the law.

### III.

### Analysis

We analyze the proposed class following the levels of inquiry of Rule 23(a), a relatively straightforward endeavor, after which we will address the more contentious issues of predominance and superiority. In considering whether to certify a class, the court may only look to the above considerations and not consider the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Furthermore, because the claims regarding medical monitoring center on the same substantive issues as the addiction claims, we will not consider it separately from the evaluation of

the overall motion for certification. Following *Eisen*, we will not consider the substantive question of whether Puerto Rico law authorizes medical monitoring.

### A. *Rule 23(a)*

■ First, the proposed class must meet the numerosity standard, which requires that a class be large enough to make joinder impracticable. If required to describe plaintiffs' proposed class of hundreds of thousands of members in a word, we would indeed call it numerous. Second, the class must have commonality among the members; that is, the questions of law or fact that are common to the class must dominate the claim. We will follow the convention of considering this issue along with predominance, which centers on similar queries. Third, the class must entail typicality in that the issues raised reflect those affecting the members of the class as a whole. Commonality and typicality are distinguishable in that typicality centers on the "adequacy of representation," *Georgine v. Amchem*, 83 F.3d at 632, thus merging the typicality analysis with that of the adequacy of representation.

We find that the representativeness standard is not met for two reasons: The dearth of information about the identity of class members and the likely diversity of such a large class. First, the agnostic position in which the court and all parties sit as to the actual identity of the class members in such an expansive group renders such an analysis nearly impossible. Without statistical analyses of cigarette-addicted Puerto Ricans, we cannot ascertain the plaintiffs' representative status. Plaintiffs provide little clear information as to the management of the various interests among this broad class which could include people who have smoked a few times in their lives, and people who smoked several packs daily for decades. Furthermore, the little information available regarding the class indicates that the class' diversity surpasses any possibility of effective representation. Although the class' size does not *a priori* prevent the satisfaction of the typicality standard, it significantly raises the likelihood that the standard cannot be met. Issues raised in *Georgine*, such as differences between people based on levels of injury, as well as present and prospectively injured people, *Georgine*, 83 F.3d at 630–32, render the possibility of adequate representation highly improbable. In sum, of the four criteria, plaintiffs have only met the requirement of numerosity.

### B. *Predominance*

■ As stated in the rules, common issues must predominate within the class to make expanding the action practicable. *Amchem*, — U.S. —, —, 117 S.Ct. 2231, 2243, 138 L.Ed.2d 689 (1997). Evidence that individual issues outweigh class-wide issues forces a court to deny class certification. In the *Amchem* case, the Supreme Court upheld the Third Circuit's conclusion that common issues did not predominate in the class of asbestos victims. The purported class in the instant case includes all who are addicted to cigarettes. Although the proposed class would number in the hundreds of thousands rather than *Castano's* fifty million cigarette smokers, such a class nonetheless would present unprecedented challenges to the fundamental notion of commonality underlying a class action. The overwhelming number of claimants would present a range of issues that would overwhelm the structure of a class action. In the case of *Barnes v. American Tobacco Co.*, 176 F.R.D. 479 (E.D.Pa. 1997), the Eastern District of Pennsylvania decertified a class that it had previously certified, stating "it is obvious that this action implicates far too many individual issues to proceed on a class-wide basis." *Id.* at 498.

As in the *Amchem* case, entirely likely would be the conflict between members of the class who are currently suffering health effects of their smoking careers and those who have yet to bear the wages of their addiction. *See Amchem*, — U.S. at —, 117 S.Ct. at 2243. The failure of plaintiffs' counsel to provide a specific plan to manage these claims suggests a nearly cavalier attitude towards the complexity of the class they propose.

### C. *Superiority*

■ In order for a class to be certified the court must ascertain that the class action is a

superior form in which to resolve the issues. As the *Castano* court wisely noted, the predominance finding indirectly affects the superiority finding, for "the greater the number of individual issues, the less likely it is that superiority can be established." *Id.* at 744 n. 19. In addition to the breadth of issues discussed in the content of predominance, we find that three issues affect the superiority determination: Maturity, efficiency and manageability, and negative value.

### 1. *Maturity*

A determinative element of superiority, according to *Castano*, is the maturity of the tort. Because of the nascent but limited knowledge courts bring to the administration of these cases, the assessment of the superiority of a class action must be made from the position of a neophyte. The *Castano* court found that the immaturity of cigarette smoking actions necessarily militated against certifying such cases. Although it is possible that a class action would provide a more efficient resolution of a novel tort claim, *see* T. Dean Malone, *Castano v. American Tobacco Co. and Beyond: The Propriety of Certifying Nationwide Mass–Tort Class Actions under Federal Rule of Civil Procedure 23 when the Basis of the Suit is a "Novel" Claim or Injury,* 49 Baylor L.Rev. 817, 832–33 (1997), the shape such litigation would take could draw sustenance from the shallow well of judicial experience in such cases. In that sense, the torts stemming from cigarette smoking have not been established in the clear fashion of asbestos and other mass torts. We are, thus, required to analyze the viability of this class using related precedent and reason, rather than the concrete pasts of cases tried.

### 2. *Efficiency and Manageability*

In part, this rule is designed to require the resolution of cases by class action to be an economical alternative to individual suits. *See* Fed.R.Civ.P. 23 Advisory Committee's Notes (1966 Amendment, subdivision (b)(3)). As one scholar noted, discussing the processing of mass tort claims, "collectivizing ... does not inevitably produce a net gain." John A. Siliciano, *Mass Torts and the Rheto-*

*ric of Crisis,* 80 Cornell L.Rev. 990, 996 (1995). In the *Georgine* case, a lack of efficiency also derailed the proposed class. 83 F.3d at 632–33. Here, plaintiffs propose that subsequent to the first stage, individual trials would determine actual liability toward each member of the class. Trying hundreds of thousands of cases hardly seems practicable, *id.*, far less so in this jurisdiction, where many of the proposed class members would require translation. In the *Castano* case, the court found problems not only involving the substantive demonstration of a nicotine addiction, but also raising manageability issues regarding the notification to a class of millions, subclassing for transient residents, and other ·difficulties. Although the instant case would involve a smaller population, millions of native-born Puerto Ricans live in the mainland United States, a fact that would cause unimaginable difficulties in terms of notification and determination of class membership. Managing such a fluid class would undoubtedly overwhelm this district court.

Plaintiffs provide no convincing counterpoint to the daunting possibility they propose. We infer that rather than actually try all these cases, plaintiffs' counsel is presuming that defendants will scurry to settle subsequent to a first-round loss. Such a presumption violates the fairness requirement of class certification law. *See In re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1298–99 (7th Cir.1995) (discussing the pressure on defendants to settle class action suits). Aside from the fact that due process provides defendants with the right to a case-by-case determination, as *Amchem* demonstrated, an enormous class settlement raises innumerable fairness issues. In fact, even if many of the hundreds of thousands of proposed class members file individual suits, we doubt that it would consume many more judicial resources than the certified class would.

Plaintiffs have submitted the recently-decided *Small and Hoskins,* Index No. 110949/96, N.Y.Supreme Court (Oct. 28, 1997), *Docket Document No. 92,* in which that court granted a class certification for residents of New York who have purchased cigarettes since 1980 in New York. Although this case marks a victory for those

who seek to hold defendant cigarette manufacturers liable, its analysis, focused on the relatively cognizable class of New York cigarette purchasers since 1980, brings little to our instant inquiry. Indeed, as Judge Ramos stated in his order granting certification, "[u]ndoubtedly a claim which turns on proof of actual addiction would involve far too many subjective factors and present many of the same manageability concerns cited in *Castano* to warrant class action treatment." *Id.* at 9.

### 3. *Negative Value*

Finally, we address the issue of whether the case is a negative value suit, one in which the costs to the plaintiff exceed the likely recovery. Negative value suits often spawn class actions because the recovery potential grows exponentially, mitigating the costs of prosecuting a case against well-funded defendants. Class actions, thus, may provide the only remedy for certain groups of plaintiffs whose individual suits would be negative value suits. "Class actions ... permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In this regard, plaintiffs correctly point to defendants' imposing prowess. This action, uncertified, would pit a few plaintiffs against some of the wealthiest multinational corporations in world history.

Although we cannot ignore this reality, neither do we find it to be dispositive as to the superiority question. Merely because this case, without class certification, shifts to a distinctly uphill plane for plaintiffs does not in itself justify certification in the face of such monumental manageability problems. Unequal resources between adversaries presents no new challenges to this court. Much litigation in this court involves multinationals such as those defending this case. The plaintiffs in those cases, owing to civil procedure and due process, nevertheless receive a fair hearing of their grievances. In short, the negative value of this case cannot justify the headlong plunge into an unmanageable and interminable litigation process that, at the outset, shows little promise for fairness to either cigarette-addicted Puerto Ricans or the defendant manufacturers.

The Fifth Circuit held that the *Castano* case was not a negative value suit because of the possibility of an award of attorney's fees and the assurance by the plaintiffs' counsel that individual cases would go forward. *Castano*, 84 F.3d at 748. Puerto Rico law authorizes the award of attorney's fees for torts if temerity has been proven. 32 L.P.R.A.App. III R. 44.1(d) (1995). If the allegations concerning the defendants' knowing manipulation prove to be correct, plaintiffs may be awarded attorney's fees. Furthermore, although today we deny certification to plaintiffs, we will remain aware of the inequity in resources across adversarial lines, and will endeavor to ensure that neither party, through unnecessary inundations of paper or dilatory tactics, abridges the fairness of these proceedings.

Finally, we note that the substantive grounds for our decision not to certify the proposed class render it unnecessary to reach the contentious statute of limitations issue.

### IV.

### *Conclusion*

As we addressed in our previous orders in this case, specifically regarding this court's jurisdiction over the Tobacco Institute, strong, apparently substantiated allegations have been made in this case. *Barreras Ruiz v. American Tobacco Co.*, 964 F.Supp. 613, *reconsideration denied*, 977 F.Supp. 545 (D.P.R.1997). We cannot, however, let the impressive evidence against the defendant cigarette manufacturers color our analysis of the instant class action issue. *Eisen*, 417 U.S. at 178, 94 S.Ct. 2140. We, therefore, based on the proposed class action's lack of superiority over individual actions, along with the lack of a predominance of common issues among the members of the proposed class, **DENY** the motion to certify the class.

This Opinion and Order disposes of *Docket Documents Nos. 76, 83, 84, 90, and 92.*

**IT IS SO ORDERED.**