Group A: Julio Alustiza COLLAZO, Jose Luis Cruz–Claudio and Felix Torano–Diaz; and as Co–Presidents of the De–Facto Association of GAR–OMB Illegally and Unconstitutionally Declared "Confidential Employees" and Demoted. Group B: Jose Torres–Heredia, Jesus Muñiz Cruz and as Co–Presidents of the De–Facto Association of State Insurance Fund Corp., Unlawfully and Unconstitutionally Demoted Employees. Group C: Nitsuga Rosario–De–La–Cruz, Engelberto Sostre–Santos, Angel Martinez–Santiago Jose A. Torres and as CoPresidents of the De–Facto Association of Transitory Public Service Employees and Illegally Declared "Discardable" and Unconstitutionally Terminated. Group D. David Rivera–Nazario, Gilberto Batista Rivera and as Co–Presidents of the De–Facto Association of Substantially Harassed Public Service Employees, Plaintiff,

v.

Sila M. CALDERÓN In Her Personal and in Her Official Capacity and as Governor of Puerto Rico; The Commonwealth Government of Puerto Rico for Injunctive Relief; César Miranda in his Personal and Official Capacity as Chief Secretary of the Government of Puerto Rico; Ferdinand Mercado, in his Personal and in his Official Capacity as Secretary of State; Melba Acosta in her Personal and in her Official Capacity as Director of the Office of Management and Budget; Nicolas Lopez–Peña in his Personal Capacity and in his Official Capacity as Administrator of the State Insurance Fund Corp. Of the Commonwealth of Puerto Rico; Jose Izquierdo in his Personal and Official Capacity as Secretary of Transportation and Public Works; Jaime Martinez–Addarich, Ponce Regional Technical Operations Administrator of the Electric Energy Authority in his Personal and Official Capacity; The Electric Energy Authority; Rafael Martinez, In his Personal and Official Capacity as General Services Interim Director of the Environmental Quality Board (EQB); And

Gladys Gonzalez, in her Personal and in her Official Capacity President of the Environmental Quality Board (EQB) and Persons A to Z and W, Other Unknown Conspirators Acting in Violation of Plaintiffs' Constitutionally Protected Rights, Defendants.

No. CIV. 01–1660CCC.

United States District Court, D. Puerto Rico.

Sept. 12, 2002.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR, for plaintiff.

Zuleika Llovet–Zurinaga, Laura Belendez–Ferrero, Reichard & Escalera, Roberto A. Fernandez–Quiles, Lespier & Munoz Noya, Frederick R. Auld, Autoridad de Carreteras, Pedro J. Manzano–Yates, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Jaime Martinez–Addarich, Ponce, PR, Luis F. Colon–Conde, San Juan, PR, Lourdes T. Pagan–Gonzalez, Rio Piedras, PR, for defendants.

## ORDER

CEREZO, District Judge.

This is a civil rights action filed by four distinct "groups" of plaintiffs which seek redress for alleged acts of political discrimination imputed to a myriad of defendants. "Group A," with only three named plaintiffs, is described in the complaint as being "composed of employees who used to work as State Assistance Coordinators (known as Governor's Authorized Representatives, or GAR officers) for the Office of Management and Budget (OMB)." Complaint, docket en-

try 1, p. 6, ¶ 5. It also presumptively includes "all public service, regular, contractual or temporary employees, characterized as 'confidential' or 'trust' employees who were terminated or demoted solely for political reasons and without granting them their due process rights to pre-determination/pre-demotion informal hearing evaluations and without respecting their constitutionally protected property rights." Complaint, p. 7, ¶ 6. "Group B," with two named plaintiffs, is "composed of some 300 employees of the State Insurance Fund Corp. (SIFC) of the Commonwealth of Puerto Rico." Complaint, p. 12, ¶ 19. "Group C," with four named plaintiffs, is "composed of employees who used to work in the Transportation and Public Works Department (publicly known as DTOP) in transitory, 'nómina,' temporary, probationary or irregular positions, and who were terminated from their employment as a consequence of political discrimination, violating their First and Fourteenth Amendment rights." Complaint, pp. 19–20, ¶ 33. Finally, "Group D," with two named plaintiffs, is defined as being "composed of public employees whose employment was terminated through constructive dismissals, or whose transfer was equal to a constructive demotion, in all instances occurring without prior informal hearings, evaluations, and without respect for their due process rights. Group D consists of approximately 1,000 to 5,000 employees whose constitutional rights have been violated in similar fashion to those of the Plaintiffs, under essentially common facts and applicable law." Complaint, p. 26, ¶ 48.

On July 11, 2001, plaintiffs filed a Motion for First Additional Plaintiffs (**docket entry 13**) by which they attempted to add forty-eight named plaintiffs and approximately one thousand unnamed plaintiffs to this action. In denying said motion, the Court observed that there had been "no attempt by the so-called first additional plaintiffs or by those named in the complaint to comply with the requirements of a class action pursuant to Fed.R.Civ.P. 23." Order, docket entry 30, p. 2. It further noted that given that the case was

" ... brought by individual plaintiffs whose claims will be considered on an indi-

vidual basis ... [i]t seems obvious to any reasonable litigant that the claim of over 1,000 plaintiffs cannot be effectively managed by a single judge in a single case nor is it fair to require defendants to respond and defend themselves against this myriad of claims."

*Id.,* at pp. 2–3.

Plaintiffs have asked for reconsideration of that Order, and moved for certification of a class pursuant to Fed.R.Civ.P. 23 (**docket entry 32**). They have also requested that an additional party be allowed to participate as an intervenor-plaintiff in "Group A" (**docket entry 43**), to bifurcate the issues and separate the causes of action included in their complaint (**docket entry 48**), and, having filed two separate cases which apparently encompass the "Group B" and "Group C" plaintiffs, to authorize "consolidation" of the pertinent parts of this complaint to be continued in those new cases (**docket entry 51**). Finding all their requests to be vapid, we now DENY them.

### I. Consolidation

We begin by addressing their request for "consolidation" of parts of this complaint with two new actions recently filed. Plaintiffs inform, and the records at the Clerk's Office confirm, that on March 28, 2002 they filed two new cases related to this action. The case of *José Torres–Heredia, et. al. v. Nicolás López–Peña, et. al.,* Civil No. 02–1466(SEC), is an action by forty plaintiffs which mirrors the claims brought in this action by the "Group B" plaintiffs. In turn, the case of *Nitsuga Rosario–De–La–Cruz, et. al. v. José M. Izquierdo–Encarnación et. al.,* Civil No. 02–1467(CCC), involves ninety two plaintiffs raising claims which correspond to those brought by the "Group C" plaintiffs in this case. Plaintiffs now seek to "consolidate" the claims brought in this action with those filed in the separate cases.

The consolidation of actions is a case management tool designed to save limited judicial resources and is usually employed to assign cases that are related, albeit not identical, to the same Judge in order to unify their handling for pretrial and trial purposes. *See e.g.* Local Rule of Procedure 302(5); *see also Bay*

*State HMO Management v. Tingley Systems, Inc.,* 181 F.3d 174, 178 (1st Cir.1999) ("the essence of consolidation is that, even though the cases are technically separate actions, they are treated as a single action for particular purposes.") It is of no use, however, when the same action is merely filed more than once, as in the situation before us. We really do not see any benefit in consolidating the claims brought by the "Group B" and "Group C" plaintiffs with the two actions newly filed, being these two just a revamped rehash of their original action. Accordingly, their request for consolidation (**docket entry 51**) is DENIED. The Court, instead, will dismiss the claims brought by the "Group B" and "Group C" plaintiffs in this case, without prejudice of continuing with their litigation in the new actions.

### II. Bifurcation of issues and separation of actions

Plaintiffs have also curtly moved for the "multi-bifurcation of the issues in this case" and the "separation of the causes of action." Docket entry 48, p. 1, ¶¶ 1 & 2. No reasons were given in the motion in support for either request, although the setting of a status conference was also demanded presumably to discuss these matters. In any event, the motion plainly fails to at least identify the issues that they want to bifurcate and the causes of action that they want to separate, in order for the Court to evaluate the merits of said petitions or whether they even justified the holding of a status conference. It may very well be that the request to separate the causes of action has now turned moot with the filing of the two spin-off cases mentioned above. Inasmuch as plaintiffs have failed to place the Court in a position to fairly evaluate their requests (docket entry 48), the same are DENIED.

### III. Intervention

We turn now to plaintiffs' request that Mr. Carlos Durant–Molina be allowed to participate in the case as an "Intervener Co–Plaintiff Group A GAR–OMB_FEMS A–4." Docket entry 43, p. 1. To sustain said request, plaintiffs allege that Durant–Molina's action involves "an illegal and politically discrimina-

tory termination of almost exactly the same contract as original plaintiff Laurido–Laurido," *id.*, at p. 2, that he was "also a permanent employee by a federally controlled contract with the Office of Management and Budget—FEMA—in Puerto Rico", *id.* at p. 2, ¶ 4, and that "he has common questions of facts and law, [and] the claims or defenses are typical of the claims or defenses [of] original Group A GAR–OMB–FEMA." *Id.*, at p. 3, ¶ 8. The sole rule of procedure cited by plaintiffs as support for their petition is Fed.R.Civ.P. 20(a), which governs the permissive joinder of parties.

■ Rule 20 permits the joinder of parties when the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and present some "question of law or fact [in] common." The rule is "liberally construed to entertain a broad scope of litigation." J. Moore, Moore's Federal Practice § 20.02(1)(a) (3d ed.1997). It is not self-executing, however. Thus, if joinder is not made at the initial filing of the complaint by the naming of the plaintiffs deemed appropriate, additional parties may only be added by amending the complaint. *Id.*, at § 20.02(2)(a)(ii). Plaintiffs, however, have not moved to amend the complaint under Fed.R.Civ.P. 15, opting instead to request intervention which is governed by the standards established in Fed.R.Civ.P. 24. But intervention is plainly inapplicable to his circumstances, as, for one thing, the disposition of this action will not "impair or impede" any future attempts to pursue his claim. *See* Rule 24. Accordingly, the request for intervention (docket entry 43) is DENIED.

### IV. Class certification

We now reach plaintiffs' petition for certification of a class pursuant to Fed.R.Civ.P. 23 (**docket entry 32**). In their complaint, plaintiffs originally described a class composed of four sub-classes, or "Groups." Given our decision to dismiss the claims brought by the "Group B" and "Group C" plaintiffs due to their filing of separate actions, we will only address their request as to the "Group A"and "Group D" plaintiffs, as sub-classes of the class they seek to certify.

The class which plaintiffs seek to certify is loosely described as being composed by "U.S. citizens and residents of Puerto Rico" who have "satisfactorily and consistently complied with all employment-related performance standards" yet "[d]ue to defendants' actions . . . have been substantially harmed in terms of their property, liberty and hedonic rights; they have suffered a violation of their constitutionally protected rights without just cause; they have been persecuted and discriminated against; and they have been deprived of their basic, fundamental, natural and constitutional rights." Complaint, docket entry 1, ¶¶ 3, p. 5.

The subclasses, or "groups", are defined as follows:

5. Plaintiffs Group A: This Group is composed of employees who used to work as State Assistance Coordinators (known as Governor's Authorized Representatives, or GAR Officers) for the Office of Management and Budget (OMB). These GAR–OMB–FEMA officers had been recruited some two and a half years before to work on various assistance programs specifically assigned by the President of the United States through FEMA assistance programs. Such assistance programs are currently ongoing and they continue to be responsible for economic resources assigned by FEMA. The officers were recruited under strict Federal Regulations and previously approved by Federal Officers pursuant to expressly applicable Federal non-discrimination laws and procedures. The positions were operational in nature and specifically established as "non-confidential" positions. Group A Plaintiffs were terminated for political reasons in violation of the aforementioned Federal laws and in violation of their constitutional rights.

6. Group A Plaintiffs also include all public service, regular, contractual or temporary employees, characterized as "confidential" or "trust" employees who were terminated or demoted solely for political reasons and without granting them their due process rights to pre-determination/pre-demotion informal hearing evaluations and without respecting their constitu-

tionally protected property rights. The GAR–OMB–FEMA group referenced in Section "5" above consists of about 10 presently known public service employees and the additional Group A Plaintiffs referenced in this section consist of approximately 90 presently projected American Citizens whose constitutional rights have been violated under essentially similar common facts and applicable law.

48. Group D is composed of public employees whose employment was terminated through constructive dismissals, or whose transfer was equal to a constructive demotion, in all instances occurring without prior informal hearings, evaluations, and without respect for their due process rights. Group D consists of approximately 1,000 to 5,000 employees whose constitutional rights have been violated in similar fashion to those of the Plaintiffs, under essentially common facts and applicable law.

Complaint, ¶¶ 5–6, 48, pp. 6–7, 26.

■ To be certified under Rule 23, a class must first satisfy four threshold requirements listed in its subsection (a): numerosity of members, commonality of one or more questions of law or fact, typicality of representative claims or defenses, and adequacy of representation. If all these requirements are satisfied, the parties seeking class certification must also establish that the action is maintainable under subsections (b)(1), (2), or (3). The Court, in evaluating the motion for class certification, must take as true all the allegations made in support of certification and may not examine the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Plaintiffs have the burden of showing that all the prerequisites for a class action have been met. *Makuc v. American Honda Motor Co., Inc.,* 835 F.2d 389, 394 (1st Cir.1987).

### A. Numerosity

■ Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Plaintiffs, however, may not rely on speculation regarding the size of the class. *Roe v. Town of Highland,* 909 F.2d 1097, 1100 at n. 4. (7th Cir.1990). To satisfy the impracticability requirement, they must proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number. J. Moore, *Moore's Federal Practice* § 23.23 (3d ed.1997).

■ Plaintiffs have failed to do so. Simply put, no evidence has been provided by them to support their assertion that "Group A" consists of at least 90 additional persons aside from the 10 which they claim to already know, and that "Group D" includes anywhere from 1,000 to 5,000 employees. Those numbers are plainly speculative. Moreover, it is obvious that the joinder of the 10 putative plaintiffs of "Group A" that they already know would not be impractical. Accordingly, the numerosity requirement of Rule 23(a)(1) is not satisfied.

### B. Commonality

■ Rule 23(a)(2) requires plaintiffs to demonstrate that there is at least one question of law or fact common to the class. *James v. City of Dallas, Tex.,* 254 F.3d 551, 570 (5th Cir.2001). Where a common question of law refers to standardized conduct by defendants toward members of the putative class, a common nucleus of operative fact is typically presented, and the commonality requirement is usually met. *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988).

Plaintiffs affirm that the proposed class shares at least eight common questions, most of which revolve around an alleged standardized pattern of adverse employment decisions based on political discrimination. Under the applicable standards, these questions are enough to satisfy the Rule 23(a)(2)'s commonality requirement.

### C. Typicality

■ The typicality requirement of Rule 23(a)(3) requires the Court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 597 (7th Cir.1993); *see also Patrykus,* 121 F.R.D. at 361–62. While factual differences

between the claims do not alone preclude certification, the representative's claim must arise from the same event, practice or conduct, and be based on the same legal theory as those of other class members. Moore, *supra.*, § 23–93. Typicality may be defeated, however, if factual differences predominate to the extent where the court must make highly fact-specific or individualized determinations in order to establish a defendant's liability to each class member. *Id.*, at § 23–96.

A review of the claims raised by the various class representatives reveals the diverse nature of employment actions in controversy, which occurred at different agencies. The three representatives of "Group A," which allegedly were occupying "non-confidential" positions, were "summarily terminated" by the Executive Director of the Office of Management and Budget (see Complaint, ¶¶ 10, 14, 17; pp. 9, 11, 12), while one of the two representatives of "Group D,", a career employee of the Puerto Rico Electric Power Authority, was allegedly transferred and demoted (Complaint, ¶ 52, p. 29). No specific information was provided as to the adverse employment action purportedly suffered by the other representative of "Group D," although we do know from the complaint's allegations that he occupies a career position at yet another agency, the Environmental Quality Board.

■ Clearly, the facts described by the various class representatives portray individualized claims of discrimination which do not seem to share a common core of allegations with the class at large, aside from the imputation that all were the result of political discrimination. Indeed, it appears from the allegations of the complaint that resolution of the merits of their claims will require independent consideration of each plaintiff's qualifications for his position and their work performance and duties, which will have to be analyzed also in light of the employment conditions within each of the agencies that employed them. It is evident, then, that each plaintiff will prevail only upon an individualized showing of political discrimination. Thus, we cannot conclude that the claims of the various class representatives are typical of the claims of the putative class. The typicality requirement of Rule 23(a)(3) is not met in this action.

### D. Adequacy of representation

■ Rule 23(a)(4) requires that the named plaintiffs adequately and fairly represent the interests of the class as a whole. The determination of whether the representative parties will fairly and adequately protect the interests of the class entails a twofold inquiry. First, the moving party must show that the interests of the representative party will not conflict with the interests of any of the class members. Secondly, the counsel chosen to pursue said suit must be qualified, experienced, and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985).

■ In this case, while we have no reason to believe that plaintiffs' counsel will not adequately pursue this matter, the potential of conflicting interests between class members appears too great to allow certification. Specifically, the personalized nature of the class representatives' claims which we noted above while discussing the typicality prong raises a serious question as to whether the representative parties could or would fairly and adequately protect the interests of the class. The named plaintiffs' efforts may very well end up being directed toward presenting and defending their individual claims at the expense of their fellow class members. In view of these circumstances, we conclude that plaintiffs also fail to comply with the adequacy of representation requirement of Rule 23(a)(4).

Plaintiffs having failed to satisfy three out of the four requirements of Rule 23(a), we need not consider the additional requisites established by Rule 23(b). Their request for certification of a class (**docket entry 32**) is, therefore, DENIED.

### V. Conclusion

In sum, plaintiffs' Motion for Reconsideration of Order Docketed on August 29, 2001 and Motion for Certification of Class Pursuant to Fed.R.Civ.P. 23 (**docket entry 32**),

Motion for Additional Plaintiff as Intervenor (**docket entry 43**), Motion for a Status Conference, for Bifurcation or Separation of the Cases (**docket entry 48**), and Motion About Filing of New Cases and Request for Consolidation of Actions (**docket entry 51**) are DENIED. Partial judgment will be entered dismissing the claims brought by the "Group B" and "Group C" plaintiffs in this case without prejudice of continuing with their litigation in the new actions.

Finally, in view of the Court's denial of the request for class certification, plaintiffs are ORDERED TO SHOW CAUSE, within the term of eleven (11) days after notice, why the claims brought by the two named plaintiffs of "Group D" should not be dismissed without prejudice pursuant to Fed.R.Civ.P. 20 and 21.

SO ORDERED.