**PUERTO RICO COLLEGE OF DENTAL SURGEONS, on its own and on behalf of its members, et al., Plaintiff,**

v.

**TRIPLE S MANAGEMENT INC, et al., Defendants.**

**Civil No. 09–1209 (JAF).**

United States District Court, D. Puerto Rico.

March 13, 2013.

---

Edna Hernandez–Arroyo, Avila, Martinez & Hernandez, Julio E. Fontanet–Maldonado, San Juan, PR, for Plaintiff.

Beatriz Annexy–Guevara, Rafael Escalera–Rodriguez, Reichard & Escalera, Cesar T. Alcover–Acosta, Manuel A. Pietrantoni, Casellas, Alcover & Burgos PSC, Rosa M. Cruz–Niemiec, Cruz Niemiec & Vazquez, Jose L. Ramirez–Coll, Joseline Rodriguez–Ortiz, Fiddler Gonzalez & Rodriguez, P.S.C, Jorge E. Perez–Diaz, Pietrantoni Mendez & Alvarez, Salvador J. Antonetti–Stutts, Ana M. Rodriguez–Rivera, O'Neill & Borges, Frank Gotay–Barquet, Gotay & Perez, P.S.C., Miguel E. Bonilla–Sierra, Miguel E. Bonilla Sierra Law Office, Carmen G. Torrech–Cabrero, German J. Brau–Ramirez, Morell Bauza Dapena & Cartagena LLC, Adrian Sanchez–Pagan, Sanchez–Betances, Sifre & Munoz–Noya Law Offices, PSC, Joan Schlump–Peters, Monique Guillemard–Noble, Nachman & Guillemard, PSC, San Juan, PR, Luis F. Juarbe–Jimenez, Marichal, Hernandez, Santiago & Juarbe, LLC, Guaynabo, PR, Quincy M. Crawford, DLA Piper Co., Baltimore, MD, Miglisa L. Capo, Carolina, PR, Kathleen Taylor Sooy, Tracy A. Roman, Washington, DC, for Defendants.

### OPINION AND ORDER

JOSÉ ANTONIO FUSTÉ, District Judge.

Before the court is Plaintiffs' motion for class certification. (Docket No. 383.) We ordered the parties to brief the issue of class certification simultaneously to the court.

(Docket No. 396.) The parties complied with that order and submitted simultaneous briefs. Plaintiffs filed a memorandum in support of class certification, and defendants submitted memorandums in opposition to class certification.[1] Plaintiffs and a few of the defendants then submitted response briefs.[2] We have considered the parties' arguments. For the 20 following reasons, we deny Plaintiffs' motion to certify the class.

## I.

### *Factual Background*

Plaintiffs are the Puerto Rico College of Dental Surgeons ("College") and nine individual dentists licensed to practice in Puerto Rico. (Docket No. 169.) The College is an entity created by the Puerto Rico legislature. See 20 L.P.R.A. §§ 111–123. With minor exceptions, every dentist licensed to practice in Puerto Rico must belong to the College. The nine individually-named plaintiffs are dentists who are members of the College and who allegedly "entered into provider contracts with defendants." (Docket No. 169.) Defendants are twenty-two insurance companies providing dental insurance and other health-care plans in Puerto Rico.

Plaintiffs allege that Defendants have committed a wide-ranging series of actions that breached their dentist provider contracts. Plaintiffs' allegations are set forth in their amended complaint, memorandum of law in support of class certification, and in a three-page "Summary of Claims" ("Summary") attached to their memorandum. (Docket Nos. 69, 383, 383–1.) Plaintiffs' Summary includes one or two-line descriptions of each wrongful practice Plaintiffs allege the Defendants committed. (Docket No. 383–1.) In the two columns next to each wrongful practice,

Plaintiffs list the total number of claims, as well as the specific insurance companies that allegedly committed each practice. (*Id.*)

For example, Plaintiffs' Summary alleges that ten of the defendants engaged in "Retaliation ... for objections to amendments of clauses to contracts." (*Id.* at 1.) The defendants alleged to have committed this practice are American Health, Cruz Azul, Delta, Humana, MCS, Preferred Health Care, Preferred Medical Choice, Salud Dorada, Triple–S, and IMC. (*Id.*) Each wrongful practice has a different number of claims attached, and corresponds to (mostly) different defendants. For example, Plaintiffs allege ten claims for "Forcing Dentists to accept audit results under penalty of contract cancellation." The only defendants alleged to have committed this practice are Delta, MCS and Triple–S. (*Id.*) Consistent with this overall pattern, Defendants MetLife and CGLIC are each alleged to have committed unlawful practices that the other did not commit, and vice-versa. (Docket No. 387 at 4.)

Defendants have also submitted affidavits in support of their opposition briefs. Defendants MetLife and Humana argue that this evidence demonstrates the individualized, rather than common, questions relevant to determining Plaintiffs' injuries. (Docket Nos. 79, 387.)

MetLife and CGLIC submitted factual evidence opposing Plaintiffs' motion. (Docket No. 387–1, 387–2.) In a sworn declaration, Courtney Ransom ("Ms. Ransom"), MetLife's Assistant Vice–President for Dental Products, attests that only two of the named plaintiff dentists—Dr. Noel Aymat and Dr. Norma Martínez Acosta—entered into provider contracts with MetLife. (*Id.*) Ms. Ransom attaches true and correct copies of the

1. We received briefs in opposition from Defendants First Medical Health Plan, Inc. and International Medical Card, Inc. (Docket No. 376); MMM Healthcare, Inc. and Preferred Medicare Choice, Inc. (Docket No. 377); Humana, Inc. (Docket No. 379); MAPFRE Life Insurance Company and Mennonite General Hospital, Inc. (Docket No. 378); a joint brief filed by Triple–S, Inc., Triple–C Inc., and Triple–S Management, Inc. (collectively, "Triple–S"); American Health, Inc.; Cruz Azul de PR, Inc.; MCS Advantage, Inc., MCS Management Options, Inc., and Medical Card Systems, Inc. (collectively, "MCS") and

Delta Dental of Puerto Rico, Inc. ("Delta") (Docket No. 382); and Metropolitan Life Insurance Company ("MetLife") and Connecticut General Life Insurance Company ("CGLIC") (Docket No. 387).

2. Plaintiffs submitted a response brief (Docket No. 397), as did Defendants MetLife and CGLIC; Humana; Triple–S; American Health, Inc.; Cruz Azul de PR, Inc.; MCS; and Delta (Docket Nos. 396, 399, 400).

dental service agreements entered into with these Plaintiffs. (*Id.*) Ms. Ransom also submits an example of the "explanation of benefits" that MetLife sends to dentists. These explanations contain the following information: The patient's name, the date(s) of service, the CDT codes the dentist identified on the claim form, the CDT codes MetLife paid or denied, and amount paid per CDT code. Ransom also includes examples of the table for maximum allowable charges for the years 2000 to 2010; she states that the tables are amended "from time to time."

Humana has also submitted factual evidence in opposition to class certification. (Docket Nos. 379, 379–1, 379–2, 379–3, 379–4, 379–5, 379–6.) The main piece of evidence is a sworn statement made under penalty of perjury provided by Marelli Moro, an employee of Humana. (Docket No. 379–1.) Moro's statement, which she labels a "supplemental declaration," supplements an earlier declaration that she made in March 2011. (*Id.*) In her earlier "declaration," Moro provided true and correct copies of the agreements between Humana and three of the provider plaintiffs: Drs. Noel Aymat, Angel Robles Adorno, and Pedro A. Cheverez–González. (Docket Nos. 195–1, 195–2, 195–3, 195–4.) In this supplemental declaration, she provides true and correct copies of the agreements that exist between Humana and three additional provider plaintiffs, including Drs. Thomas Manuel Medina, Isabel M. del Valle Díaz, and Norma Martínez. (Docket Nos. 379–1, 379–2, 379–3, 379–4, 379–5, 379–6.) Moro also states that, to the best of her knowledge, the remaining provider plaintiffs—Drs. Valmin Miranda Santiago, Jose Mercado Gigliotty, and Ramón Fernando González García—have not entered into Dental Service Agreements with Humana. (Docket No. 379–1 at 3.)

Moro's statement, and the accompanying copies of the agreements, establish that the "provisions of the Dental Service Agreements that Humana and its predecessor companies have entered into with dental providers in Puerto Rico over the last 15 years

have varied over time and may also vary from dentist to dentist." (*Id.*) For example, Dr. Martínez entered into a Dental Services Agreement with PCA Insurance Group, a predecessor of Humana, on October 4, 1996. (*Id.*) Another plaintiff, Dr. del Valle, signed a Dental Services Agreement with Humana on January 27, 2011. (*Id.*) The contracts that plaintiffs signed with Humana vary in the following ways: Reimbursement amounts for covered services provided under the government-administered health plan; reimbursement amounts for covered services provided under private commercial plans; the time period in which providers must submit claims to Humana; the time periods in which Humana must pay clean claims; the time periods in which providers must respond to requests from Humana for additional information on a claim; and the time periods associated with adjudicating disputes over claims. (*Id.*) Some of the relevant agreements contain arbitration provisions, while others do not. (*Id.* at 2.)

There are also abundant differences between the contracts offered by different defendants. For example, MetLife and CGLIC's contracts do not contain arbitration clauses, while some of Humana's contracts do. (Docket No. 399 at 9.) The MetLife contracts require providers to submit reimbursement claims within thirty days, while Humana's contracts offer reimbursement periods of either sixty to ninety days. (*Id.*) Some of the named plaintiffs have contracts that contain the sixty-day period, while others have contracts mandating a ninety-day period. (*Id.*)

In their response brief, Plaintiffs do not challenge any of these facts submitted by Humana and MetLife.[3] (Docket No. 397.) Plaintiffs present a slew of legal arguments, but do not provide any factual treatment beyond their Summary.

## II.

### *Procedural Background*

We summarize briefly the trajectory of this case. Plaintiffs originally filed their

---

**3.** Plaintiffs do challenge the assertion by Triple–S that Plaintiffs' counsel has failed to keep dentists and the College informed of conflicts of interest and other litigation developments. (Docket No.

397 at 13.) Because we decide the order on the basis of commonality and typicality, we need not address this factual dispute.

complaint in Puerto Rico's Court of First Instance. (Docket No. 1–4.) Plaintiffs later amended their complaint, alleging five causes of action. (Docket No. 169.) Plaintiffs' claims arose from Defendants' allegedly "common fraudulent scheme designed to systematically deny, delay and decrease payments to dentists" accomplished through contracts of adhesion, manipulation of billing codes, acts of intimidation and coercion, and unfair business practices. (Docket No. 169.) Plaintiffs sought, and still seek, $150 Million in damages and injunctive relief. (*Id.*) Defendants MetLife and CGLIC removed this case to our court, utilizing the expanded grant of diversity jurisdiction created by the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109–2 (codified in scattered sections of 28 U.S.C.). (Docket No. 1.)

We found that the proposed class had not been sufficiently defined and remanded the case. (Docket No. 84.) The First Circuit Court of Appeals found this determination to be better suited for the class-certification stage and, therefore, returned the case to us. *College of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33 (1st Cir.2009).[4] We then ordered limited discovery and briefing as to the applicability of the "Local Controversy" and "Home State" exceptions to CAFA jurisdiction, *see* 28 U.S.C. § 1332(d)(4). (Docket No. 101.) We denied motions to remand the case based upon these exceptions. (Docket No. 164.)

In August 2011, we entered an opinion and order dismissing all of Plaintiffs' claims except their breach-of-contract claim. (Docket No. 278 at 17.) We held that the remaining claim was "dentist-specific" and "only boils down to potential money due and owing." (*Id.* at 17.) We also asked the parties to brief whether Plaintiffs had satisfied the

"amount in controversy" jurisdictional element of CAFA. (*Id.*) The parties complied with that order and submitted limited discovery.

In response to our opinion and order dismissing all but one of their claims, Plaintiffs filed a motion for reconsideration. We rejected the motion. (Docket No. 350.) Plaintiffs then appealed our decision to the Court of Appeals. Their appeal was dismissed for lack of finality. (Docket No. 363.) Plaintiffs then filed a second motion for reconsideration, which we also rejected. (Docket No. 366.) Codefendant MMM filed a motion for reconsideration, arguing that Plaintiffs' contract claim should be dismissed for lack of privity. (Docket No. 85.) We denied the motion without prejudice, finding that such questions were more appropriate for the class certification stage of the case. (Docket No. 366.) We also asked the parties to brief the question of class certification to us, and the parties complied.

### III.

#### *Legal Standard*

A class action lawsuit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal–Mart Stores, Inc. v. Dukes*, — U.S. ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Under Rule 23, in order for a class to be certified, the class must meet the four requirements of Rule 23(a), as well as one of the requirements of Rule 23(b). Fed.R.Civ.P. 23. Plaintiffs argue that they have satisfied the requirements of Rule 23(b)(3).[5]

---

4. A copy of the First Circuit's opinion can be found at Docket No. 95.

5. In their amended complaint, Plaintiffs made brief reference to certification under Rule 23(b)(2). (Docket No. 169 at 3.) But, after MetLife and Humana challenged Plaintiffs on this point (Docket Nos. 379, 387), Plaintiffs abandoned the argument. Neither Plaintiffs' memorandum in support of certification nor their response brief mentions Rule 23(b)(2). (Docket Nos. 383, 397.) Plaintiffs' abandonment of this issue means that it is waived. *United States v.*

*Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any case, we agree with Defendants Humana and MetLife that Rule 23(b)(2) does not apply here. (Docket Nos. 379 at 12, 387 at 26.) Rule 23(b)(2) does not apply to cases such as this, where Plaintiffs "would be entitled to an individualized award of monetary damages," and where "a single injunction would [not] provide relief to every member of the class." *Wal–Mart*, 131 S.Ct. at 2557. As we stated in our earlier order, Plaintiffs' remain-

■ To determine whether class certification is appropriate under Rule 23(b)(3), we must determine whether Rule 23(a)'s "threshold requirements" have been met, as well as whether Rule 23(b)(3)'s two additional requirements are met. *In Re New Motor Vehicles*, 522 F.3d 6, 18 (1st Cir.2008) (citations omitted). Rule 23(a) provides that class certification is appropriate only if:

> (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are often referred to as numerosity, commonality, typicality, and adequacy. *In Re Motor Vehicles*, 522 F.3d at 19.

To certify a class under Rule 23(b)(3), we must also find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

■ "The moving party bears the burden of establishing the elements necessary for class certification the four requirements of 23(a) and one of the several requirements of Rule 23(b)." *Abla v. Brinker Restaurant Corp.*, 279 F.R.D. 51, 55 (D.Mass.2011) (citing *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir.2003)). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal–Mart*, 131 S.Ct. at 2551 (2011). We may certify a class only if we are "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (quoting *General Telephone Co. of Southwest*

*v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

■ In undertaking this analysis, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* Our analysis may, therefore, overlap with an assessment of the merits of a party's claim. *Id.* "That cannot be helped. 'The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's causes of action.'" *Id.* (quoting *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364).

For the reasons explained below, we find that Plaintiffs fail the commonality and predominance requirements.[6] Our analysis of the relevant factors under Rule 23 will overlap somewhat. The First Circuit has recognized that "there is some overlap among the certification criteria of commonality, Rule 23(a)(2), typicality, Rule 23(a)(3), and predominance, Rule 23(b)(3)." *In Re Motor Vehicles*, 522 F.3d at 19.

## IV.

### *Analysis*

#### A. *Numerosity*

■ Rule 23(a)(1) requires a party to show that "[t]he class is so numerous that joinder of all members is impracticable." Interpreting this language, courts have held that "representatives only need to show that it is extremely difficult or inconvenient to join all the members of a class." 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1762, at 221 (3d ed.2005). The criteria for this test will vary from case to case; no arbitrary rules exist specifying the minimum number of members of the class. *Id.* at 1762.

Plaintiffs argue that they have satisfied the numerosity requirement, because of the large number of potential plaintiffs, defendants,

---

ing contract claim "only boils down to potential money due and owing." (Docket No. 278 at 17.) Plaintiffs have not proposed any form of injunctive or declaratory relief that would bring relief to each member of the class.

**6.** Although Plaintiffs and certain defendants presented arguments on the question of standing, we do not reach this issue, given our disposition of the class certification issue on the commonality and predominance factors contemplated by Rule 23.

and the complaint's long time period. (Docket No. 383 at 7–9.) Plaintiffs note that the College includes 1,740 dentists; their "summary of claims" identifies 906 specific grievances; and the complaint covers a ten-year time period. (*Id.*) Defendant MetLife argues that this is insufficient to establish numerosity, because there is no showing of how many plaintiffs may have valid claims. (Docket No. 396 at 4.) Plaintiffs' Summary does not specify how many plaintiffs are represented. (Docket No. 387–1.) The fact that there are 1,740 dentists who are members of the College does not mean that all of these plaintiffs have claims. (*Id.*) It may be possible, MetLife argues, that only a small fraction of the dentists in the College have claims against defendants. (*Id.*)

We think that the large number of claims alleged by Plaintiff is sufficient to satisfy the numerosity requirement. Even despite Plaintiffs' weak factual showings, it may prove impracticable to join all of the eventual plaintiffs and defendants in a single case. In light of our determination below that Plaintiffs have failed the commonality and predominance criteria, it is unnecessary to address numerosity at any greater length.

### B. *Commonality*

Rule 23(a) requires that "there are questions of law or fact common to the class." Traditionally, courts gave this factor a "permissive application." *In Re New Motor Vehicles*, 522 F.3d 6, 18 (1st Cir.2008) (quoting 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1763, at 221 (3d ed.2005)). But in the recent case of *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011), the Supreme Court construed the requirement more strictly. There the Court held that to satisfy the commonality requirement, a representative's claim must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, 131 S.Ct. at 2551. The Court approvingly quoted a more restrictive

interpretation of Rule 23's "easy to misread" language. *Id.* To show commonality, a party must do more than merely present common questions. *Id.* Rather, a party must demonstrate "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551 (2011) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 131–132 (2009)).

First, we consider the arguments Plaintiffs have made in support of class certification. We note at the outset that Plaintiffs' showing is very weak. Their legal analysis is superficial and outdated. For example, Plaintiffs cite to district court cases that are now fifteen years old, such as *Barreras v. The American Tobacco Co.*, 180 F.R.D. 194, 195 (1998). (Docket No. 383 at 6.) In light of the "hundreds of recent decisions affecting the expanse of class action" litigation, this type of legal argumentation is unsatisfactory. *McLaughlin on Class Actions: Law and Practice*, Vol. 1, Preface at iii (8th ed. 2011). Given the rapid developments in class action litigation, parties are advised "to cite class action authority that is even a few years old only after evaluating its continuing vitality against recent pronouncements." *Id.* Plaintiffs have failed to do so.

Much more significant is Plaintiffs' complete failure to provide any detailed factual argumentation. While Plaintiffs are not required at this stage to prove any of their allegations, their Summary is far below the type of showing required for certification.

In fact, Plaintiffs' Summary "does nothing more than list twenty-two categories of alleged conduct and place a number next to each category." (Docket No. 396 at 2.) The Summary does not say anything about the proposed class. It does not state how many members of the purported class are represented in the Summary. Nor does the Summary even mention the name of any individual class member. As MetLife points out, the sample could include two dentists or one hundred dentists. The Summary does not state how the sample was gathered, or

whether it is meant to be random or representative. (Docket No. 396 at 2–3.) Moreover, the Summary is not authenticated. There are no affidavits or statements supporting the Summary. No explanation of how the Summary was created is made. The Summary does not state what type of conduct underlies each claim, or whether there is any overlap between the different claims. (Docket No. 396.)

Plaintiffs argue that they have met the commonality requirement because "all claims set forth against Defendants are directly related to Defendants' actions in breach of the contractual relationships exiting [sic] with the proposed class members, which actions violate the provisions of Articles 1207, 1208, 1054, 1059, 1795, 1796, of the Puerto Rico Civil Code." (Docket No. 383 at 9.) Plaintiffs then list an incredibly long and varied, non-exhaustive list of the actions they allege Defendants took: requiring Plaintiffs to enter into boilerplate adhesion contracts that establish terms of payments, audit proceedings, solution of grievance proceedings, etc.; unjust changing of invoicing codes; failure to comply with payments; delay and denial of payments for "different" reasons; changing dentists' clinical criteria based on economic interests; and retaliation against class members. (*Id.*)

It is unclear what common questions of law or fact bind these disparate claims. To the contrary, the wide-ranging nature of these allegations militates against a finding of commonality. (Docket No. 399 at 6–7.) Plaintiffs end their discussion of commonality with the assertion that all of Defendants' actions "not only result in economic losses to class members but also are detrimental to patient interests and adversely affect the profession as a whole." (*Id.*) In their response brief, Plaintiffs argue that Defendants have engaged in "class-wide practices" that hurt the dentist profession as a whole. (Docket No. 397 at 11–12.) Plaintiffs state that, "for example, Defendants have adopted a practice of automatically bundling and down-coding certain codes for services provided by dentists,

irrespective of the terms of contracts." (*Id.*) Plaintiffs provide no detail or set of facts that explains how Defendants committed these alleged practices. (*Id.*)

In contrast to Plaintiffs' shallow analysis, Defendants have provided detailed and persuasive legal and factual arguments in their opposition briefs. Defendants focus the majority of their arguments on Plaintiffs' failure to satisfy the commonality requirement. Defendant MetLife describe the many different types of injuries and contractual arrangements that make up Plaintiffs' case. (Docket No. 387 at 11–19.) MetLife also emphasizes the individualized, specific evidentiary proof that would be required for each plaintiff to prevail on his claims. (*Id.*) Defendant Humana makes similar arguments regarding commonality. (Docket Nos. 379 at 10–11, 399 at 10.) Defendants MMM and PMC join Humana's memorandum and file a brief supplemental memorandum. (Docket No. 377.) Defendants First Medical Health Plan, Inc. and International Medical Card, Inc. also argue that Plaintiffs have failed to show the requisite commonality. (Docket No. 376 at 4–7.) Defendant Triple–S, Inc.[7] treats the commonality and predominance requirements jointly, arguing that Plaintiffs fail both requirements. (Docket No. 382 at 9–18.)

We agree that Plaintiffs have failed the commonality requirement. Tellingly, Plaintiffs' memorandum and response briefs do not cite to any case in which similar allegations have satisfied the commonality prong. In fact, the case that Plaintiffs cite more than any other, *In re Puerto Rican Cabotage Antitrust Litigation*, 269 F.R.D. 125 (D.P.R. 2010), highlights the significant differences that distinguish Plaintiffs' case from a properly certified class. In *Puerto Rican Cabotage*, the plaintiffs provided detailed allegations of a common conspiracy among eight providers of waterborne cabotage services to illegally fix prices. *Id.* at 128. The court held these allegations sufficient to establish commonality, noting that in antitrust claims, "the existence of an alleged conspiracy or monopoly is a common issue that will satisfy" the

---

**7.** Triple S, Inc. files its brief on behalf of itself as well as Triple–C, Inc.; and Triple–S Management, Inc.; American Health, Inc.; Cruz Azul de PR, Inc.; MCS Advantage, Inc.; MCS Management Options, Inc.; MCS; and Delta.

commonality requirement. *Id.* (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 (4th ed. 2002)). This case, however, is not an antitrust case, and there are no remaining allegations of a conspiracy. *Puerto Rican Cabotage* is thus clearly inapposite. Unlike *In Re Puerto Rican Cabotage,* here there are no common questions of law or fact that bind the entire class together.

The second major distinction between this case and *Puerto Rican Cabotage* is the huge gap in the level of factual detail proffered to support certification. In *Puerto Rican Cabotage,* plaintiffs "buttressed" their claims with detailed allegations regarding the finances of defendants and the market, as well as "assertions based upon the existence of an ongoing criminal investigation by the Department of Justice." *Id.* at 128. Plaintiffs also presented affidavits of several named plaintiffs, explaining why they were adequate class representatives. *Id.* at 133. In *Puerto Rican Cabotage,* the plaintiffs also provided reports and affidavits by experts describing how many customers were affected by defendants' practices. *Id.* at 130, 133.

Here, by contrast, the evidence provided by Plaintiffs is "worlds away" from the showing required to support certification. *Wal-Mart,* 131 S.Ct. at 2554. The only evidence Plaintiffs have provided is the Summary. We are perplexed why Plaintiffs have failed even to provide any affidavits, given the clear wording of our earlier order addressing class certification. (Docket No. 366.) In our earlier order, we specifically called for the Plaintiffs to provide "limited supplementation (e.g., affidavits by plaintiffs) that addresses the narrow question of class certification." (*Id.* at 3.) Why Plaintiffs disregarded this order is a mystery. Their failure to provide any detailed factual treatment has done great harm to their case for certification.

Many courts in this district have consistently denied certification on such weak factual showings. *See Rodriguez–Feliciano v. Puerto Rico Electric Power Auth.,* 240 F.R.D. 36, 39 (D.P.R.2007) (noting a court's obligation to test for "actual, not presumed, conformance with Rule 23") (citations omitted); *Collazo v. Calderon,* 212 F.R.D. 437,

441–443 (D.P.R.2002) (denying certification where plaintiffs had failed to "proffer some evidence" of numerosity and typicality); *Alvarado Morales v. Digital Equipment Corp.,* 669 F.Supp. 1173, 1185–1186 (D.P.R.1987) (denying class certification where plaintiffs "fail[ed] to plead facts sufficient to show" that Rule 23 requirements were met).

As MetLife argues, the case of Rodriguez–Feliciano is instructive for our purposes. (Docket No. 399.) There, as here, the plaintiffs alleged that commonality was satisfied because defendant's actions had affected the entire plaintiff class as a whole. Id. The court in Rodriguez–Feliciano had little trouble concluding that this "bold and brief assertion" of class-wide injury was insufficient to demonstrate commonality. Id. Here we are presented with a similarly "bold and brief" assertion of the alleged harm done to the plaintiff dentist class. Plaintiffs' allegations, as they were in *Rodriguez–Feliciano,* are completely unsupported by any factual detail.

Even if we were to overlook the barebones nature of Plaintiffs' argument, it seems clear that abundant factual distinctions have the potential to impede common answers. *Wal-Mart,* 131 S.Ct. at 2551. Here, there are no "common answers" that can solve the key questions "in one stroke." *Id.* Even Plaintiffs acknowledge that Defendants refused to pay their claims for "different" reasons. (Docket No. 383 at 9.) These different reasons that Defendants allegedly provided for refusing Plaintiffs' claims militate against a finding of commonality. *See id.* ("demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.").

For example, here one plaintiff may be able to prove that one defendant, say Met-Life, provided an impermissible reason for underpaying a particular claim. But that would do nothing to show that a different defendant, say Humana, underpaid a different claim by a different plaintiff. This is so not only because MetLife and Humana may have used different reasons for denying claims, but also because the contracts themselves were not the same. A breach as to one party may not be a breach as to another. *See Klay v. Humana, Inc.,* 382 F.3d 1241,

1264 (11th Cir.2004) (holding that plaintiffs' general allegations of underpayment "do nothing to establish that any individual doctor was underpaid on any particular occasion") (citations omitted).

Many other courts, including ones in this circuit, have applied *Wal–Mart* to even stronger facts, finding that plaintiffs could not show the requisite commonality. *See Loef v. First American Title Insurance,* Civ. No. 08–311, 2012 WL 6113844, at *7 (D.Me. Dec. 10, 2012) (noting that Wal–Mart has transformed the Rule 23(a)(2) commonality standard from a "low bar" to "a far more searching inquiry.") (citations omitted). In *Loef,* the court held that plaintiffs, who had purchased title insurance at allegedly inflated rates, could not show that they were entitled to a particular refinance rate without resorting to individualized proof. Id. Thus, although plaintiffs could present common questions, dissimilar answers defeated commonality. *Id.* (citing *Wal–Mart,* 131 S.Ct. at 2556). Finding there were no "common answers to these common questions," the court held that plaintiffs could not satisfy commonality. *Id.* (collecting cases).

A district court in Nevada recently dismissed a down-coding and bundling claim that is similar to Plaintiffs' case here. In *Windisch v. Hometown Health Plan, Inc.,* Civ. No. 08–664, 2011 WL 4758715, at *2 (D.Nev. Oct. 7, 2011), the court held that a purported plaintiff class of medical providers had failed to establish commonality. Citing *Wal–Mart,* the court wrote that plaintiffs had failed to allege a "common bad act" that could serve as the "glue" to bind together a class claim against four health insurer defendants. *Id.* Here, as in *Windisch,* there are no well-pleaded allegations that defendants engaged in a common policy of down-coding and bundling. Here, Plaintiffs allege a "pattern of conduct incurred by Defendants," claiming that Defendants have "consistently incurred in said practices." (Docket No. 397.) But, here, Plaintiffs do not provide any well-pleaded allegations that Defendants down-coded or bundled in common ways.

These are very similar to the allegations that the district court found lacking in *Windisch,* where the plaintiffs alleged a "pattern

of similar bad acts with no common decision or decision-maker." *Id.* at *5. The court held that merely "similar grievances," as opposed to a unified course of action by defendants, could not establish commonality under *Wal–Mart. Id.; see also Quesada v. Banc of America Inv. Services,* Civ. No. 11–1703, 2013 WL 623288 (N.D.Cal. Feb. 19, 2013) (finding no commonality where "Plaintiff has not proposed a realistic means for classwide resolution of the common question" whether Defendant recorded call without plaintiffs' consent).

The same reasoning applies here. Plaintiffs have simply failed to satisfy the commonality requirement. *Wal–Mart,* 131 S.Ct. at 2551–52. The Supreme Court acknowledged in *Wal–Mart* that the commonality, typicality and adequacy requirements are related concepts. *Id.* at 2551 n. 5 ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts" for determining whether class certification is appropriate under particular circumstances). In *Wal–Mart,* the Supreme Court found it unnecessary to evaluate these related inquiries, given its finding that Plaintiffs failed the commonality requirement. *Id.* We take the same approach here. In light of our finding that Plaintiffs fail both the commonality and predominance factors, we find it unnecessary to address the adequacy and typicality requirements.

**C. *Predominance***

Predominance has traditionally been construed as a more demanding standard than commonality. *In Re Motor Vehicles,* 522 F.3d at 19. Moreover, "the predominance inquiry ... involves an individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues." *Abla,* 279 F.R.D. at 57 (quoting *In Re Relafen Antitrust Litigation,* 218 F.R.D. 337, 343 (D.Mass.2003)). To determine whether predominance is met "necessarily implicates the judge's discretion, because it requires a common sense judgment regarding what the case is really about, and whether it would be more efficient to try the case as a class suit."

*Id.* (quoting *Overka v. American Airlines,* 265 F.R.D. 14, 19 (D.Mass.2010)).

Our assessment of this case, based on the proffered evidence presented to us, is that individualized issues of fact will predominate over common ones. The uncontested factual evidence submitted by MetLife and Humana, in particular, demonstrates the myriad factual distinctions that will frustrate any effort to try this case as a class action. Plaintiffs have simply failed to set their case apart from the long line of cases in which "[n]umerous courts have held that the need to examine individual negotiations or individual contracts to determine injury weighs against class certification, for it requires an unwieldy examination of each transaction to decide if there is proximate cause." *In Re Pharmaceutical Industry Average Wholesale Price Litigation,* 230 F.R.D. 61, 89 (D.Mass.2005) (collecting cases). This case thus fits squarely within this long line of decisions holding individual breach of contract claims not susceptible to class treatment.

Plaintiffs' discussion of the predominance requirement, similar to their commonality argument, does not even acknowledge all of the relevant considerations. (Docket Nos. 383, 397.) Plaintiffs write a conclusive assertion that they "satisfie[d] Rule 23(b)(3) because the common questions of law or fact predominate over any questions affecting individual members, and the class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Docket No. 383 at 14.) In support of this statement, Plaintiffs claim that "the class members are not interested in individually controlling the prosecution of separate actions." (Docket No. 383 at 15.) Plaintiffs also state that they fear retaliation by Defendants if they handle these cases individually. (*Id.*)

This factor that Plaintiffs allude to—a party's interest in individually controlling the prosecution or defense of separate actions— is only one of the four factors that Rule 23(b)(3) specifically provides as relevant to the predominance inquiry. See Fed.R.Civ.P. 23(b)(3) (listing four "matters pertinent to these findings"). Plaintiffs make no reference to second or fourth factors contemplat-

ed by the Rule, such as "the extent and nature of any litigation concerning the controversy already begun by or against class members," or "the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3)(b), (d).

Defendant Humana argues specifically that Plaintiffs fail the predominance requirement. (Docket No. 399 at 6–8.) Although many of the other defendants characterize most of their analyses as ones under commonality, we think they are equally, if not more squarely rooted in the notion of predominance. As we noted above, "there is some overlap among the certification criteria of commonality, Rule 23(a)(2), typicality, Rule 23(a)(3), and predominance, Rule 23(b)(3)." *In Re Motor Vehicles,* 522 F.3d at 19. For the following reasons, we agree that Plaintiffs fail the predominance requirement.

The case that Humana and MetLife cite more than any other is *Klay v. Humana,* 382 F.3d 1241, 1263 (11th Cir.2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). In *Klay,* the Eleventh Circuit Court of Appeals reversed a lower court's order certifying a plaintiff class of health care providers. *Id.* The court held that plaintiffs' breach of contract claims failed to satisfy the commonality and predominance requirements. *Id.* at 1267. ("[E]ven though the plaintiffs' breach of contract claims involve some relatively simple common issues of law and possibly some common issues of fact, individualized issues of fact predominate."). The parallels between *Klay* and this case are clear. MetLife notes the many similarities between Plaintiffs' allegations and the ones made by the plaintiffs in *Klay.* (Docket No. 387.)

In *Klay,* the court held that to determine whether each individual plaintiff had a claim for breach of contract would require a highly fact-intensive inquiry into each relevant transaction. Each plaintiff would have to prove the services he provided, the request for reimbursement he submitted, the amount to which he was entitled, the amount he actually received, and the insufficiency of the defendant insurer's reason for denying full payment. *Id.* at 1265. The court held that

such claims were simply not susceptible to class treatment. *See id.* ("There are no common issues of fact that relieve each plaintiff of a substantial portion of this individual evidentiary burden."). The same reasoning applies fully here.

Plaintiffs respond that their case is sufficient to establish predominance under *Klay.* (Docket No. 397 at 16–17.) Plaintiffs argue that their case fits within an exception recognized by the court in *Klay.* (Docket No. 397 at 16–17.) Specifically, Plaintiffs argue that they satisfy commonality by alleging "class-wide bundling and down-coding practices by Defendants, irrespective on [sic] how each Defendant uses their systems to attain their goal." (*Id.* at 17.) Plaintiffs quote the following language from *Klay*, 382 F.3d at 1265:

> If the plaintiffs were able to prove that the billing programs automatically grouped together the first and second procedure specified on the HCFA–1500 form, regardless of what they were paying doctors for the first, then the breach of contract issue would be subject to generalized proof. After establishing that the computer program worked in this way, the doctors would be able to simply submit their HCFA forms to the court for an easy determination of damages; no further evidence of breach would be necessary.

We agree that if Plaintiffs were able to prove this type of systematic breach, they would be able to establish commonality. For example, if Plaintiffs could point to one way in which the computer systems used by Defendants down-coded and bundled their claims, they might be able to establish that common questions predominated over individual ones. But here Plaintiffs have provided no explanation—none whatsoever—for how they intend to use such a generalized method of proof to demonstrate breach of contract. They do not even explain what the "class-wide bundling and down-coding practices" consisted of. In fact, Plaintiffs themselves say that they intend to prove Defendants breached their contracts irrespective of how Defendants' systems worked. We are at a complete loss as to how Plaintiffs intend to prove their claims. There is no suggestion of any way in which Plaintiffs could satisfy

their evidentiary burden with class-wide evidence or proof.

In *De Giovanni v. Jani–King Intern., Inc.,* 262 F.R.D. 71, 77 (D.Mass.2009), the court noted that "[p]laintiffs have not put forward any common form of proof that would permit this Court to make such a determination without engaging in lengthy, individualized inquiries regarding breach. As such, common issues will not predominate, and class certification of the breach of contract claim is inappropriate." 262 F.R.D. at 77. Again, the same is true here. In this case, Plaintiffs have completely failed to put forward "any common form of proof" that would make Plaintiffs' claims susceptible to class treatment. *See id.* ("Consequently, because, in resolving the class' breach of contract claims, individualized inquiries would overwhelm common questions, the Court denies the plaintiffs' motion to certify the breach of contract claims.").

Plaintiffs' Summary provides little, if any, guidance. The Summary includes one line that says "Unjust changes to invoicing codes." (Docket No. 383–1.) Plaintiffs allege fifty-two claims under this heading. (*Id.*) The only Defendants that are alleged to have committed this are American Health, CIGMA, COSVI, Delta, First Plus, Humana, MCS, MetLife, Preferred Medical Choice, Triple–S, and Medicare Dental. (*Id.*) We note that eleven of the defendants are not listed as having committed any violations under this category. (*Id.*) Yet this category— down-coding and bundling—is the only category Plaintiffs mention in their response brief's discussion of the predominance requirement. (Docket No. 397 at 17–18.) It is not clear what claims are supposed to justify joining the remaining eleven defendants who are not included in this category. Nor is it possible to tell how many plaintiffs are bringing claims of down-coding and bundling.

Even if Plaintiffs did allege that all twenty-two defendants committed down-coding and bundling, we think that individualized questions would predominate. To get a sense for why this is so, consider the necessary elements of plaintiff's claims. To establish a valid breach of contract claim under Puerto Rico law, a plaintiff would need to prove: 1)

a valid contract; 2) breach of that contract; and 3) damages. *See Mega Media Holdings, Inc. v. Aerco Broadcasting Corp.*, 852 F.Supp.2d 189, 199–200 (D.P.R.2012) (citations omitted).

In this case, the evidence required to establish a breach of contract claim would require hundreds, if not thousands, of mini-trials devoted to analyzing each disputed contract provision and transaction. Plaintiffs entered into different contracts with as many as twenty-two defendants over a ten-year period. Making matters worse, the complaint alleges that the contracts were subject to "continuous" variance over time, as insurers terminated or amended contracts. (Docket No. 169 at 6.) Moreover, the contracts used by the different defendants contain materially different terms—this is not a situation where all plaintiffs signed one form contract. Certain defendants, such as Met-Life, specifically disclosed that certain CDT codes were not eligible for payment when combined with other CDT codes.

The uncontested factual detail provided by MetLife and Humana illustrates the various pieces of evidence that would have to be considered in each transaction: The patient's name, the date(s) of service, the CDT codes the dentist identified on the claim form, the CDT codes paid or denied, amount paid per CDT code, and the maximum allowable charges for each procedure, which varied from time to time during the ten-year time frame. This type of inquiry is simply not susceptible to class treatment. *See Abla*, 279 F.R.D. at 58 (D.Mass.2011) ("it is not possible or advantageous" to treat breach of contract claims as class action where each claim is susceptible to individual proof and defense); *see also Sacred Heart Health Sys., Inc. v. Humana*, 601 F.3d 1159, 1170–71 (11th Cir.2010) (finding that "individualized issues flowing from variations in the contractual terms and the parties' course of dealings" defeat commonality).

In conclusion, Plaintiffs have simply failed to carry their burden to "affirmatively demonstrate [their] compliance with the Rule." *Wal–Mart*, 131 S.Ct. at 2551 (2011). Plaintiffs' motion to certify the class will be denied. The language from our earlier order is still true: this case is "dentist-specific" and "only boils down to potential money due and owing." (Docket No. 283 at 17.)

## V.

### Next Steps

The question whether jurisdiction under CAFA still exists following decertification is an open question within the First Circuit. *See College of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33 (1st Cir.2009) (expressing "no opinion on this question") (collecting cases). There is authority on both sides of this debate. *Compare Falcon v. Philips Elecs. N. Am. Corp.*, 489 F.Supp.2d 367, 368 (S.D.N.Y.2007) (stating that CAFA jurisdiction is terminated if class certification is denied on a "basis that precludes even the reasonably foreseeable possibility of subsequent class certification"), and *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 492 (1st Cir.2009) (suggesting in dictum that "denial [of class certification] would ... defeat [CAFA] jurisdiction"), with *Genenbacher v. CenturyTel Fiber Co. II*, 500 F.Supp.2d 1014, 1017 (C.D.Ill.2007) (contra). *See generally Avritt v. Reliastar Life Ins. Co.*, Civ. No. 07–1817, 2009 WL 1703224, at *1–2 (D. Minn. June 18, 2009) (collecting conflicting case law).

The parties are instructed to brief the question whether jurisdiction still exists under CAFA following this order. In their memorandums, the parties should also propose to the court a reasonable means of concluding this case expeditiously. We continue to believe that this case is "dentist-specific" and only "boils down to potential money due and owing." (Docket No. 283 at 17.)

## VI.

### Conclusion

For the reasons stated above, we **DENY** Plaintiffs' motion to certify a class.

**IT IS SO ORDERED.**